# EXHIBIT 1

In VIRGINIA:

## THE CIRCUIT COURT OF THE CITY OF ROANOKE

HELEN ELIZABETH FARRAR-CLARY,

     Plaintiff,

v.

THE BOYD CORPORATION,
SOUTH HILL, VIRGINIA,

Civil Action No.: CL18000447-00

JURY TRIAL DEMAND

     Defendant.

## COMPLAINT

COMES NOW, Plaintiff Helen Elizabeth Farrar-Clary, by counsel, and states as her Complaint against Defendant The Boyd Corporation, South Hill, Virginia ("Boyd"), the following:

### I. Jurisdiction and Venue

1.    The Court has jurisdiction over this matter, as it arises from Virginia common law, as expressed in *Bowman v. State Bank of Keysville*, 229 Va. 534, 331 S.E.2d 797 (1985).

2.    Ms. Farrar-Clary is a resident of Brunswick County, Virginia.

3.    On information and belief, Boyd is the parent corporation of several automotive dealerships in Virginia and North Carolina, including Boyd Honda and Boyd Chrysler Dodge Jeep Ram of South Hill, Virginia, Boyd Chevrolet Buick GMC of Emporia, Virginia, and Charles Boyd Chevrolet Cadillac Buick GMC of Henderson, North Carolina.

4.     At the time of her wrongful termination, Ms. Farrar-Clary was the Marketing Director for Boyd, and her work location was located at 200 West Danville Street, South Hill, Virginia 23970 although Ms. Farrar-Clary often worked remotely.

## II. Factual Background

5.     Ms. Farrar-Clary was initially hired as a Sales Representative at Boyd Honda of South Hill, located at 211 West Danville Street., South Hill, VA 23970, in January of 2009.  After a series of promotions and excellent work performance reviews, Ms. Farrar-Clary worked as Boyd's Internet Manager, Business Development Manager, and later as Marketing Director, a position she held until her wrongful termination on June 30, 2017.

6.     Ms. Farrar-Clary was compensated with a base salary, plus earned commissions.   At the time of her termination from employment, she worked approximately 50 hours per week, and made approximately $84,000 per year, excluding other benefits.

7.     Ms. Farrar-Clary, at all times pertinent to this Complaint, met or exceeded Boyd's legitimate business expectations.

8.     Indeed, Ms. Farrar-Clary was the manager of fifteen (15) employees in her department, and created Boyd Honda's successful Business Development Center.

9.     After Ms. Farrar-Clary became Business Development Manager, her direct supervisor was Chris Butler, Boyd's Chief Financial Officer.

### Mr. Butler's History of Workplace Sexual Misconduct

10.     Mr. Butler maintained a pattern of unwanted sexual advances and sexual harassment in the workplace that was directed towards several female subordinate employees.

2

11.     As an example, in one instance, Mr. Butler inappropriately touched a female employee by placing his hand on this employee's thigh under her dress. This incident caused this employee to report the incident, and eventually resign her employment.

12.     On information and belief, Mr. Butler also engaged in sexual relations with certain female employees, who will be referred to herein as "Female Employee 2" and "Female Employee 3" to protect their privacy.

13.     In September 2015, at an out of town training session, Mr. Butler sent a text message to Female Employee 2 stating "bring the moscato wine up 514 (with a smiley face emoji)." Female Employee 2 reported directly to Ms. Farrar-Clary that she [Female Employee 2] engaged in sexual intercourse with Mr. Butler.

14.     Subsequently, it was common knowledge that Mr. Butler demoted this employee [Female Employee 2] and generally made the work place miserable for her in an effort to "make her quit." Indeed, Mr. Butler specifically advised Ms. Farrar-Clary that it was his intention to make this employee miserable and to force her to "quit".

15.     Female Employee 2 eventually resigned in December of 2015. Mr. Butler was not counseled or disciplined for his actions.

16.     Approximately three months later, Ms. Farrar-Clary witnessed Female Employee 3 enter Mr. Butler's hotel room at another training session on March 20, 2016.

17.     At or around 11:00 PM, Ms. Farrar-Clary sent a text message to Brandon Boyd, manager and co-owner of Boyd, stating "[Mr. Butler] CANNOT DO THIS. [Mr. Butler] IS IN AN AUTHORITATIVE POSITION."

18.     Mr. Boyd attributed Ms. Farrar-Clary's observation as the private business of two adults and Mr. Butler was again not counseled or disciplined for his actions.

3

19.     Female Employee 3 reported to one of Ms. Farrar-Clary's subordinates that she [Female Employee 3] did engage in sexual intercourse with Mr. Butler. Female Employee 3's position was eliminated in January of 2017, on information and belief, at the direction of Mr. Butler.

20.     Mr. Butler's pattern and practice of inappropriate workplace sexual relationships and behavior resulted in a culture of discrimination, and created a sexually discriminatory and hostile work environment.

### Mr. Butler's Sexual Misconduct Towards Ms. Farrar-Clary

21.     Unfortunately, Ms. Farrar-Clary, who is married, also was subjected to Mr. Butler's sexually inappropriate and discriminatory behavior, and the pervasive discriminatory and hostile work environment at Boyd.

22.     Specifically, on or about March 6, 2016, one of the sales representatives at Boyd Honda committed suicide. That evening, Mr. Butler contacted Ms. Farrar-Clary, through text message, to discuss the death of the employee.

23.     Ms. Farrar-Clary asked Mr. Butler for direction in how to handle the matter, but Mr. Butler provided none. Shortly thereafter and during the same text exchange, Mr. Butler began to make unwanted sexual advances towards Ms. Farrar-Clary.

24.     Mr. Butler texted Ms. Farrar-Clary that he wished he "had company" and asked if she wanted to "join him."

25.     Mr. Butler went on to say that he had a "connection" with Ms. Farrar-Clary and he got "lost in [Ms. Farrar-Clary's] EYES."

26.     Mr. Butler also texted Ms. Farrar-Clary that he found her "irresistible".

27.     Ms. Farrar-Clary, who had no intention of engaging in a sexual relationship with Mr. Butler, ignored and later rebuffed Mr. Butler's unwanted sexual advances.

4

28.     Mr. Butler's texts deteriorated with typographical errors as the evening progressed and he repeatedly expressed his disappointment at being rejected by Ms. Farrar-Clary.

29.     The next day, Ms. Farrar-Clary spoke with Mr. Brandon Boyd in person about Mr. Butler's lewd suggestion that she commit adultery with him, and Mr. Boyd and Ms. Farrar-Clary discussed the fact that Mr. Butler was likely intoxicated with alcohol the previous evening.

30.     Rather than address Mr. Butler's sexually inappropriate behavior or assure Ms. Farrar-Clary that Mr. Butler's conduct would not be tolerated in the workplace, Mr. Boyd simply laughed about Mr. Butler's comments, and asked Ms. Farrar-Clary "why didn't you 'sext' him back?"

31.     Mr. Boyd, who also owns a woman's clothing store in Virginia Beach, Virginia, then informed Ms. Farrar-Clary that Mr. Butler had a practice of making similar sexual advances towards the female employees at Mr. Boyd's clothing store.  Again, Mr. Butler was neither counseled, nor disciplined, for this misconduct.

### Boyd Retaliates Against Ms. Farrar-Clary
### for Rejecting Mr. Butler's Sexual Advances

32.     On information and belief, Mr. Butler was incensed at the fact that Ms. Farrar-Clary rebuffed his advances, and decided to retaliate against her.

33.     In or about May of 2016, Ms. Farrar-Clary interviewed a new receptionist, referred to here as "Jane Doe" to protect her privacy, for Boyd Honda.

34.     Ms. Farrar-Clary was hesitant to hire Ms. Doe due to poor performance in her interview, but did so under direction of Mr. Butler.

35.    Ms. Farrar-Clary's instincts proved correct, due to disturbing content that was being communicated to Boyd employees by Ms. Doe. Accordingly, Ms. Farrar-Clary was not prepared to continue to employee Ms. Doe, and communicated her concerns to Mr. Butler.

36.    However, without sufficient explanation, Mr. Butler overruled her and insisted that Ms. Doe continue to be employed.

37.    Per Mr. Butler's orders, Ms. Farrar-Clary met with Ms. Doe shortly into Ms. Doe's employment to respectfully ask Ms. Doe not to share personal stories in the workplace, as those personal stories were making other employees uncomfortable. Otherwise, Ms. Farrar-Clary and Ms. Doe maintained a normal working relationship.

38.    In or about June of 2016, Ms. Doe made a baseless complaint about Ms. Farrar-Clary, while Ms. Farrar-Clary was on vacation.

39.    Mr. Butler and Mr. Brandon Boyd subsequently advised Ms. Farrar-Clary that she would not be allowed to work in the Honda dealership any longer.

40.    Mr. Butler did not adequately investigate Ms. Doe's false complaints, and further embarrassed Ms. Farrar-Clary in her community, specifically telling employees and non-employees that Ms. Farrar-Clary had been disciplined in the workplace.

41.    On information and belief, Mr. Butler would not have insisted on Ms. Farrar-Clary's disciplinary actions or removal from the Honda dealership had Ms. Farrar-Clary given into Mr. Butler's inappropriate sexual advances.

42.    Subsequently, Ms. Farrar-Clary began working remotely and out of Boyd's Henderson, North Carolina dealership.

43.    On information and belief, this transfer resulted in a concurrent unfair salary decrease, which was not initially communicated to her.

44.   Mr. Butler also generally refused to keep Ms. Farrar-Clary apprised of meetings and other information necessary to effectively complete her job.

45.   On or about May of 2017, Ms. Farrar-Clary met with Brian Boyd, the manager of Boyd's Henderson dealership. Ms. Farrar-Clary discussed Mr. Butler's refusal to keep Ms. Farrar-Clary "in the loop" about important matters affecting Boyd's marketing.

46.   Mr. Boyd dismissed Ms. Farrar-Clary's concerns as Mr. Butler "just doing business." Mr. Boyd then revealed to Ms. Farrar-Clary that she had been receiving lower pay than she was entitled to receive, beginning on or about May of 2016.

47.   In or about May of 2017, Mr. Butler hired Jason Pittman, and directed Ms. Farrar-Clary to train Mr. Pittman in Boyd's marketing strategy. On information and belief, Mr. Pittman was hired as Ms. Farrar-Clary's replacement.

48.   On or about June 28, 2017, Brian Boyd met with Ms. Farrar-Clary to discuss her concerns about Mr. Butler.

49.   Mr. Boyd validated Ms. Farrar-Clary's concerns that she was being "forced out" of Boyd by Mr. Butler.

50.   Ms. Farrar-Clary then asked Mr. Boyd if she would have a job in Henderson if she was terminated from Boyd. Mr. Boyd suggested that Ms. Farrar-Clary work exclusively for the Henderson dealership, but take a significant salary decrease, which Ms. Farrar-Clary learned would lower her salary to $36,000 per year.

51.   Ms. Farrar-Clary's continually decreasing pay structure, as well as Mr. Butler's pervasive sexual misconduct and the related hostile work environment, caused Ms. Farrar-Cleary significant stress and anxiety.

52.     On June 30, 2017, two days after Ms. Farrar-Clary met with Mr. Boyd to discuss her ongoing concerns regarding Mr. Butler, Ms. Farrar-Clary was unlawfully terminated from employment.

53.     Ms. Farrar-Clary was terminated from employment in violation of Virginia public policy, as defined in *Bowman v. State Bank of Keysville*, as she was wrongfully discharged and/or retaliated against for refusing to submit to Mr. Butler's inappropriate sexual advances and commit adultery with him, in violation of Virginia Code Section 18.2-365.

## III. Claims

### COUNT I: WRONGFUL TERMINATION

54.     Ms. Farrar-Clary incorporates by reference herein the preceding paragraphs of this Complaint.

55.     At all times relevant to the Complaint, Ms. Farrar-Clary was married to a man other than Mr. Butler.

56.     Throughout Ms. Farrar-Clary's employment with Boyd, Mr. Butler, who was Ms. Farrar-Clary's supervisor, repeatedly sought to engage Ms. Farrar-Clary in a sexual relationship with him.

57.     Ms. Farrar-Clary refused Mr. Butler's inappropriate sexual advances.

58.     The Supreme Court of Virginia has recognized a cause of action for wrongful discharge where the discharge was based on an employer's violation of a public policy, which is expressly stated in a statute, and the employee is clearly a member of the class entitled to the protection of that policy. The Courts have recognized that allowing the employment at-will doctrine to serve as a shield for employers who seek to force their

8

employees, under threat of discharge, to engage in criminal conduct is a violation of Virginia public policy. *See Mitchem v. Counts*, 259 Va. 179, 18,3 523 S.E.2d 246, 248 (2000); *Bowman*, 229 Va. at 534, 331 S.E.2d at 797.

59.    The Commonwealth of Virginia's public policy is violated when a female employee, married or unmarried, must consent to the commission of a crime against her person and/or to engage in a conspiracy to commit a crime, to maintain her employment. *Mitchem*, 259 Va. at 183, 523 S.E.2d at 248. This public policy is embodied in Virginia Code Section 18.2-365, which prohibits adultery ("Any person, being married, who voluntarily shall have sexual intercourse with any person not his or her spouse shall be guilty of adultery, punishable as a Class 4 misdemeanor.").

60.    Furthermore, this criminal statute was enacted to protect the "personal freedoms, health, safety, [and] welfare of the general public," and Ms. Farrar-Clary is a member of the class of persons these statutes were designed to protect. *See Mitchem*, 259 Va. at 189, 523 S.E.2d at 251.

61.    By demanding that Ms. Farrar-Clary, who is married to another man, engage in a sexual relationship with him to maintain her employment, as evinced by his treatment of other female employees, Mr. Butler was demanding that Ms. Farrar-Clary commit, or conspire to commit, the crime of adultery, or both.

62.    As a member of the general public, Ms. Farrar-Clary was directly entitled to her personal freedom, health, safety, and welfare.

63.    However, Mr. Butler engaged in a campaign of ever-increasing harassment and retaliation because Ms. Farrar- Clary was steadfast in her refusal to commit adultery with him. Ms. Farrar-Clary's persistent refusal eventually led to her wrongful discharge from employment by Boyd.

9

64.    Because she was discharged for not committing criminal acts at the request of Mr. Butler, her supervisor, and because she was a member of the general public whom the Commonwealth's criminal statutes were designed to protect, Ms. Farrar-Clary's termination violates Virginia public policy.

65.    The actions of Mr. Butler, Brandon Boyd, and Brian Boyd were conducted within the scope of their employment.  Thus, liability is imputed on Boyd through the doctrine of *respondeat superior.*

66.    The acts and omissions of Boyd in discharging Ms. Farrar-Clary because she refused to engage in the crime of adultery with Mr. Butler constitutes wrongful discharge in violation of Virginia public policy.

67.    As a direct and proximate cause of Boyd's actions, Ms. Farrar-Clary has suffered and will continue to suffer pecuniary loss, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary loss.


WHEREFORE, Plaintiff Helen Elizabeth Farrar-Clary prays for judgment against Defendant The Boyd Corporation, South Hill, Virginia, and requests that the Court award her damages in the amount of Five Hundred Thousand Dollars ($500,000.00) together with pre-judgment interest from the date of wrongful termination, as well as incidental and consequential costs associated herewith, including attorney's fees and other such relief as would be fair and equitable.

RESPECTFULLY SUBMITTED,

**HELEN ELIZABETH FARRAR-CLARY**

Thomas E. Strelka, Esq. (VSB# 75488)
L. Leigh R. Strelka, Esq. (VSB # 73355)
N. Winston West, IV, Esq. (VSB # 2598)
STRELKA LAW OFFICE, PC
Warehouse Row
119 Norfolk Avenue, S.W., Suite 330
Roanoke, VA 24011
Tel: 540-283-0802
thomas@strelkalaw.com
leigh@strelklaw.com
winston@strelkalaw.com

*Counsel for Plaintiff*

Serve Date 2/19  Time 5:00 Pm
Server ID# 9161516  Init JT
Job # 2019000126

# COVER SHEET FOR FILING CIVIL ACTIONS
COMMONWEALTH OF VIRGINIA

Case No. _____

(CLERK'S OFFICE USE ONLY)

CITY OF ROANOKE                                         Circuit Court

Helen Elizabeth Farrar-Clary                    v. In re:        The Boyd Corporation
PLAINTIFF(S)                                                          DEFENDANT(S)

I, the undersigned [ ] plaintiff [ ] defendant [ ] attorney for [ ] plaintiff [ ] defendant hereby notify the Clerk of Court that I am filing the following civil action. (Please indicate by checking box that most closely identifies the claim being asserted or relief sought.)

## GENERAL CIVIL
**Subsequent Actions**
[ ] Claim Impleading Third Party Defendant
    [ ] Monetary Damages
    [ ] No Monetary Damages
[ ] Counterclaim
    [ ] Monetary Damages
    [ ] No Monetary Damages
[ ] Cross Claim
[ ] Interpleader
[ ] Reinstatement (other than divorce or driving privileges)
[ ] Removal of Case to Federal Court
**Business & Contract**
[ ] Attachment
[ ] Confessed Judgment
[ ] Contract Action
[ ] Contract Specific Performance
[ ] Detinue
[ ] Garnishment
**Property**
[ ] Annexation
[ ] Condemnation
[ ] Ejectment
[ ] Encumber/Sell Real Estate
[ ] Enforce Vendor's Lien
[ ] Escheatment
[ ] Establish Boundaries
[ ] Landlord/Tenant
    [ ] Unlawful Detainer
[ ] Mechanics Lien
[ ] Partition
[ ] Quiet Title
[ ] Termination of Mineral Rights
**Tort**
[ ] Asbestos Litigation
[ ] Compromise Settlement
[ ] Intentional Tort
[ ] Medical Malpractice
[ ] Motor Vehicle Tort
[ ] Product Liability
[ ] Wrongful Death
[X] Other General Tort Liability

## ADMINISTRATIVE LAW
[ ] Appeal/Judicial Review of Decision of (select one)
    [ ] ABC Board
    [ ] Board of Zoning
    [ ] Compensation Board
    [ ] DMV License Suspension
    [ ] Employee Grievance Decision
    [ ] Employment Commission
    [ ] Local Government
    [ ] Marine Resources Commission
    [ ] School Board
    [ ] Voter Registration
    [ ] Other Administrative Appeal

## DOMESTIC/FAMILY
[ ] Adoption
    [ ] Adoption – Foreign
[ ] Adult Protection
[ ] Annulment
    [ ] Annulment – Counterclaim/Responsive Pleading
[ ] Child Abuse and Neglect – Unfounded Complaint
[ ] Civil Contempt
[ ] Divorce (select one)
    [ ] Complaint – Contested*
    [ ] Complaint – Uncontested*
    [ ] Counterclaim/Responsive Pleading
    [ ] Reinstatement –
    Custody/Visitation/Support/Equitable Distribution
[ ] Separate Maintenance
    [ ] Separate Maintenance Counterclaim

## WRITS
[ ] Certiorari
[ ] Habeas Corpus
[ ] Mandamus
[ ] Prohibition
[ ] Quo Warranto

## PROBATE/WILLS AND TRUSTS
[ ] Accounting
[ ] Aid and Guidance
[ ] Appointment (select one)
    [ ] Guardian/Conservator
    [ ] Standby Guardian/Conservator
    [ ] Custodian/Successor Custodian (UTMA)
[ ] Trust (select one)
    [ ] Impress/Declare/Create
    [ ] Reformation
[ ] Will (select one)
    [ ] Construe
    [ ] Contested

## MISCELLANEOUS
[ ] Amend Death Certificate
[ ] Appointment (select one)
    [ ] Church Trustee
    [ ] Conservator of Peace
    [ ] Marriage Celebrant
[ ] Approval of Transfer of Structured Settlement
[ ] Bond Forfeiture Appeal
[ ] Declaratory Judgment
[ ] Declare Death
[ ] Driving Privileges (select one)
    [ ] Reinstatement pursuant to § 46.2-427
    [ ] Restoration – Habitual Offender or 3rd Offense
[ ] Expungement
[ ] Firearms Rights – Restoration
[ ] Forfeiture of Property or Money
[ ] Freedom of Information
[ ] Injunction
[ ] Interdiction
[ ] Interrogatory
[ ] Judgment Lien-Bill to Enforce
[ ] Law Enforcement/Public Official Petition
[ ] Name Change
[ ] Referendum Elections
[ ] Sever Order
[ ] Taxes (select one)
    [ ] Correct Erroneous State/Local
    [ ] Delinquent
[ ] Vehicle Confiscation
[ ] Voting Rights – Restoration
[ ] Other (please specify) _____

[X] Damages in the amount of $ 500,000.00          are claimed.

02/21/2018
DATE

[ ] PLAINTIFF  [ ] DEFENDANT  [X] ATTORNEY FOR  [X] PLAINTIFF
[ ] DEFENDANT

Thomas E. Strelka, Esq.
PRINT NAME

Strelka Law Office, P.C.
ADDRESS/TELEPHONE NUMBER OF SIGNATOR

119 Norfolk Ave., SW, Ste. 330; 540-283-0802

thomas@strelkalaw.com
EMAIL ADDRESS OF SIGNATOR (OPTIONAL)

FORM CC-1416 (MASTER) PAGE ONE 07/16

*"Contested" divorce means any of the following matters are in dispute: grounds of divorce, spousal support and maintenance, child custody and/or visitation, child support, property distribution or debt allocation. An "Uncontested" divorce is filed on no fault grounds and none of the above issues are in dispute.

**VIRGINIA:**

### IN THE CIRCUIT COURT FOR THE CITY OF ROANOKE

| | |
|---|---|
| **HELEN ELIZABETH FARRAR-CLARY,** )<br>           )<br>     **Plaintiff**     )<br>           )<br>     **v.**       )<br>           )<br>**THE BOYD CORPORATION,** )<br>**SOUTH HILL, VIRGINIA,**  )<br>           )<br>           )<br>     **Defendant.**   )  | **CL18000447-00** |

## <u>DEFENDANT'S CONSENT MOTION FOR EXTENSION OF RESPONSE DEADLINE</u>

COMES NOW Defendant The Boyd Corporation, South Hill, Virginia (hereinafter "Boyd" or "Defendant"), by counsel, with the express consent of Plaintiff Helen Elizabeth Farrar-Clary, by counsel, and hereby respectfully requests that this Court enter an order providing a brief extension of the time to file an answer or otherwise respond to Plaintiff's Amended Complaint:

1. On February 21, 2018, Plaintiff filed her initial Complaint.

2. Boyd was served with the Complaint on February 19, 2019.

3. On March 11, 2019, Plaintiff filed an Amended Complaint, which contained a removable federal claim.   Plaintiff does not object to removal.

4. Therefore, Boyd's response deadline has not yet passed.

5. However, Boyd's response deadline in this Court (April 1, 2019) falls before the 30-day removal deadline (April 10, 2019).

6. With the aim of avoiding the necessity to file a responsive pleading prior to removal, Defendant requests additional time to prepare an Answer or otherwise respond to Plaintiff's Amended Complaint.

7.      Counsel for Defendant has consulted with counsel for Plaintiff, and counsel for Plaintiff consents to the filing of this motion and the relief sought herein.

8.      Defendant hereby requests an extension of time, until April 17, 2019, to file an answer or otherwise respond to Plaintiff's Amended Complaint.

9.      This request is made in good faith and not for purposes of undue delay.

10.     A proposed order accompanies this Motion.

WHEREFORE, Defendant The Boyd Corporation, South Hill, Virginia, through the undersigned counsel, and with the express consent of Plaintiff, by counsel, respectfully requests that the Court grant this Motion and allow Defendant an extension of time, up to and including April 17, 2019, during which to file an answer or otherwise respond to Plaintiff's Amended Complaint.

Dated: March 28, 2019

Respectfully submitted,

By _J. Clay Rollins_

J. Clay Rollins, Esquire
Virginia State Bar Number 84382
clay.rollins@ogletreedeakins.com
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
901 East Byrd Street, Suite 1300
Riverfront Plaza, West Tower
Richmond, VA  23219
Tel.:      (804) 663-2332

**_Counsel for Defendant_**

2

## Certificate of Service

I hereby certify that on this 28th day of March, 2019, I served the foregoing by e-mail and regular mail on counsel for Plaintiff:

Thomas E. Strelka, Esquire
Virginia State Bar Number 75488
thomas@strelkalaw.com
L. Leigh R. Strelka, Esquire
leigh@strelkalaw.com
Virginia State Bar Number 73355
STRELKA LAW OFFICE, P.C.
Warehouse Row
119 Norfolk Avenue, S.W., Suite 330
Roanoke, VA 24011
Tel.:    (540) 283-0802

*Counsel for Plaintiff*

**BOYD CORPORATION**


By
J. Clay Rollins, Esquire
Virginia State Bar Number 84382
clay.rollins@ogletreedeakins.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
901 East Byrd Street, Suite 1300
Riverfront Plaza, West Tower
Richmond, VA  23219
Tel.:    (804) 663-2332
Fax:    (855) 843-1809

*Counsel for Defendant*

28516954.3

3

VIRGINIA:

### IN THE CIRCUIT COURT FOR THE CITY OF ROANOKE

| | |
|---|---|
| HELEN ELIZABETH FARRAR-CLARY, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| THE BOYD CORPORATION, | ) |
| SOUTH HILL, VIRGINIA, | ) |
| | ) |
| | ) |
| Defendant. | ) |

CL18000447-00

### PROPOSED ORDER

UPON CONSIDERATION of Defendant's Motion for Extension of Response Deadline, and for good cause shown, it is hereby **ORDERED** that Defendant's Motion be **GRANTED**.

Defendant The Boyd Corporation, South Hill, Virginia shall have up to and including April 17, 2019 to answer or otherwise respond to Plaintiff's Amended Complaint.

Signed:

_____

Judge, Circuit Court for the City of Roanoke

**VIRGINIA:**

### IN THE CIRCUIT COURT FOR THE CITY OF ROANOKE

| | |
|---|---|
| HELEN ELIZABETH FARRAR-CLARY, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| THE BOYD CORPORATION, | ) |
| SOUTH HILL, VIRGINIA, | ) |
| | ) |
| | ) |
| Defendant. | ) |

CL18000447-00

## PROPOSED ORDER

UPON CONSIDERATION of Defendant's Motion for Extension of Response Deadline, and for good cause shown, it is hereby **ORDERED** that Defendant's Motion be **GRANTED**.

Defendant The Boyd Corporation, South Hill, Virginia shall have up to and including April 10, 2019 to answer or otherwise respond to Plaintiff's Complaint.

Signed: *March 14, 2019*

_____

Judge, Circuit Court for the City of Roanoke

A COPY TESTE BRENDA S. HAMILTON, CLERK
By _____ Deputy Clerk

VIRGINIA:

## IN THE CIRCUIT COURT OF THE CITY OF ROANOKE

HELEN ELIZABETH FARRAR-CLARY,

      Plaintiff,

v.

THE BOYD CORPORATION,
SOUTH HILL, VIRGINIA,

      Defendant.

CIRCUIT COURT
Received & Filed
1:02 PM
MAR 11 2019
By_____
Deputy Clerk
CITY OF ROANOKE

Civil Action No.: CL18-00447

JURY TRIAL DEMAND

## AMENDED COMPLAINT

COMES NOW, Plaintiff Helen Elizabeth Farrar-Clary, by counsel, and states as her Amended Complaint against Defendant The Boyd Corporation, South Hill, Virginia ("Boyd"), the following:

### I. Jurisdiction and Venue

1.    The Court has jurisdiction over this matter, as it arises from Virginia common law, as expressed in *Bowman v. State Bank of Keysville*, 229 Va. 534, 331 S.E.2d 797 (1985).

2.    The Court has jurisdiction over this matter, as it arises from Federal law, to-wit, Title VII of the Civil Rights Act of 1964. *See* 28 U.S.C. § 1331.

3.    At all times relevant, Ms. Farrar-Clary was a resident of Brunswick County, Virginia.

4.    On information and belief, Boyd is the parent corporation of several automotive dealerships in Virginia and North Carolina, including Boyd Honda and Boyd

1

Chrysler Dodge Jeep Ram of South Hill, Virginia, Boyd Chevrolet Buick GMC of Emporia, Virginia, and Charles Boyd Chevrolet Cadillac Buick GMC of Henderson, North Carolina.

5.     At the time of her wrongful termination, Ms. Farrar-Clary was the Marketing Director for Boyd, and her work location was located at 200 West Danville Street, South Hill, Virginia 23970.

6.     Ms. Farrar-Clary has exhausted the Administrative requirements of Title VII. *See* Notices of Right to Sue, attached as **Exhibits A and B.**

## II. Factual Background

7.     Ms. Farrar-Clary was initially hired as a Sales Representative at Boyd Honda of South Hill, located at 1121 E. Atlantic St., South Hill, VA 23970, in January of 2009. After a series of promotions and excellent work performance reviews, Ms. Farrar-Clary worked as Boyd's Internet Manager, Business Development Manager, and later as Marketing Director, a position she held until her wrongful termination on June 30, 2017.

8.     Ms. Farrar-Clary was compensated with a base salary, plus earned commissions.   At the time of her termination from employment, she worked approximately 50 hours per week, and made approximately $84,000 per year, excluding other benefits.

9.     Ms. Farrar-Clary, at all times pertinent to this Amended Complaint, met or exceeded Boyd's legitimate business expectations.

10.     Indeed, Ms. Farrar-Clary was the manager of fifteen (15) employees in her department, and created Boyd Honda's successful Business Development Center.

11.     After Ms. Farrar-Clary became Business Development Manager, her direct supervisor was Chris Butler, Boyd's Chief Financial Officer.

2

### Mr. Butler's History of Workplace Sexual Misconduct

12.     Mr. Butler maintained a pattern of unwanted sexual advances and sexual harassment in the workplace which was directed towards several female subordinate employees.

13.     As an example, in one instance, Mr. Butler inappropriately touched a female employee by placing his hand on this employee's thigh under her dress. This incident caused this employee to report the incident, and eventually resign her employment.

14.     It was also common knowledge in the workplace that Mr. Butler also engaged in sexual relations with certain female employees, who will be referred to herein as "Female Employee 2" and "Female Employee 3" to protect their privacy.

15.     In September 2015, at an out of town training session, Mr. Butler sent a text message to Female Employee 2 stating "bring the moscato wine up 514 (with a smiley face emoji)." Female Employee 2 reported directly to Ms. Farrar-Clary that she [Female Employee 2] engaged in sexual intercourse with Mr. Butler.

16.     Subsequently, it was common knowledge that Mr. Butler demoted this employee [Female Employee 2] and generally made the work place miserable for her in an effort to "make her quit." Indeed, Mr. Butler specifically advised Ms. Farrar-Clary that it was his intention to make this employee miserable and to force her to "quit".

17.     Female Employee 2 eventually resigned in December of 2015. Mr. Butler was not counseled or disciplined for his actions.

18.     Approximately three months later, Ms. Farrar-Clary witnessed Female Employee 3 enter Mr. Butler's hotel room at another training session on March 20, 2016.

3

19.     At or around 11:00 PM, Ms. Farrar-Clary sent a text message to Brandon Boyd, manager and co-owner of Boyd, stating "[Mr. Butler] CANNOT DO THIS. [Mr. Butler] IS IN AN AUTHORITATIVE POSITION."

20.     Mr. Boyd attributed Ms. Farrar-Clary's observation as the private business of two adults and Mr. Butler was, again, not counseled or disciplined for his actions.

21.     Female Employee 3 reported to one of Ms. Farrar-Clary's subordinates that she [Female Employee 3] did engage in sexual intercourse with Mr. Butler. Female Employee 3's position was eliminated in January of 2017, on information and belief, at the direction of Mr. Butler.

22.     Mr. Butler's pattern and practice of inappropriate workplace sexual relationships and behavior resulted in a culture of discrimination, and created a sexually discriminatory and hostile work environment.

### Mr. Butler's Sexual Misconduct Towards Ms. Farrar-Clary

23.     Unfortunately, Ms. Farrar-Clary, who is married, also was subjected to Mr. Butler's sexually inappropriate and discriminatory behavior, and the pervasive discriminatory and hostile work environment at Boyd.

24.     Specifically, on or about March 6, 2016, one of the sales representatives at Boyd Honda committed suicide. That evening, Mr. Butler contacted Ms. Farrar-Clary, through text message, to discuss the death of the employee.

25.     Ms. Farrar-Clary asked Mr. Butler for direction in how to handle the matter, but Mr. Butler provided none. Shortly thereafter and during the same text exchange, Mr. Butler began to make unwanted sexual advances towards Ms. Farrar-Clary.

26.     Mr. Butler texted Ms. Farrar-Clary that he wished he "had company" and asked if she wanted to "join him."

4

27.    Mr. Butler went on to say that he had a "connection" with Ms. Farrar-Clary and he got "lost in [Ms. Farrar-Clary's] EYES."

28.    Mr. Butler also texted Ms. Farrar-Clary that he found her "irresistible".

29.    Ms. Farrar-Clary, who had no intention of engaging in a sexual relationship with Mr. Butler, ignored and later rebuffed Mr. Butler's unwanted sexual advances.

30.    Mr. Butler's texts deteriorated with typographical errors as the evening progressed and he repeatedly expressed his disappointment at being rejected by Ms. Farrar-Clary.

31.    The next day, Ms. Farrar-Clary spoke with Mr. Brandon Boyd in person about Mr. Butler's lewd suggestion that she commit adultery with him, and Mr. Boyd and Ms. Farrar-Clary discussed the fact that Mr. Butler was likely intoxicated with alcohol the previous evening.

32.    Rather than address Mr. Butler's sexually inappropriate behavior or assure Ms. Farrar-Clary that Mr. Butler's conduct would not be tolerated in the workplace, Mr. Boyd simply laughed about Mr. Butler's comments, and asked Ms. Farrar-Clary "why didn't you 'sext' him back?"

33.    Mr. Boyd, who also owns a woman's clothing store in Virginia Beach, Virginia, then informed Ms. Farrar-Clary that Mr. Butler had a practice of making similar sexual advances towards the female employees at Mr. Boyd's clothing store. Again, Mr. Butler was neither counseled, nor disciplined, for this misconduct.

## Boyd Retaliates Against Ms. Farrar-Clary
### for Rejecting Mr. Butler's Sexual Advances

34.     On information and belief, Mr. Butler was incensed at the fact that Ms. Farrar-Clary rebuffed his advances and complained about him and, accordingly, decided to retaliate against her.

35.     In or about May of 2016, Ms. Farrar-Clary interviewed a new receptionist, referred to here as "Jane Doe" to protect her privacy, for Boyd Honda.

36.     Ms. Farrar-Clary was hesitant to hire Ms. Doe due to poor performance in her interview, but did so under direction of Mr. Butler.

37.     Ms. Farrar-Cleary's instincts proved correct, due to disturbing content that was being communicated to Boyd employees by Ms. Doe.  Accordingly, Ms. Farrar-Clary was not prepared to continue to employee Ms. Doe, and communicated her concerns to Mr. Butler.

38.     However, without sufficient explanation, Mr. Butler overruled her and insisted that Ms. Doe continue to be employed.

39.     Per Mr. Butler's orders, Ms. Farrar-Clary met with Ms. Doe shortly into Ms. Doe's employment to respectfully ask Ms. Doe not to share personal stories in the workplace, as those personal stories were making other employees uncomfortable. Otherwise, Ms. Farrar-Clary and Ms. Doe maintained a normal working relationship.

40.     In or about June of 2016, Ms. Doe made a baseless complaint about Ms. Farrar-Clary, while Ms. Farrar-Clary was on vacation.

41.     Mr. Butler and Mr. Brandon Boyd subsequently advised Ms. Farrar-Clary that she would not be allowed to work in the Honda dealership any longer.

6

42.    Mr. Butler did not adequately investigate Ms. Doe's false complaints, and further embarrassed Ms. Farrar-Clary in her community, specifically telling employees and non-employees that Ms. Farrar-Clary had been disciplined in the workplace.

43.    On information and belief, Mr. Butler would not have insisted on Ms. Farrar-Clary's disciplinary actions or removal from the Honda dealership had Ms. Farrar-Clary given into Mr. Butler's inappropriate sexual advances.

44.    Subsequently, Ms. Farrar-Clary began working remotely and out of Boyd's Henderson, North Carolina dealership.

45.    On information and belief, this transfer resulted in a concurrent unfair salary decrease, which was not initially communicated to her.

46.    Additionally, on or about February 27, 2017, Mr. Butler directed Ms. Farrar-Clary to create a large marketing presentation for Boyd to be presented on March 8, 2017.

47.    The presentation required countless hours of work and Ms. Farrar-Clary was led to believe that Boyd co-owners, Brandon Boyd and Brian Boyd, would be at this presentation.

48.    However, on March 8, 2017, only a handful of employees attended the presentation, and neither Brandon Boyd nor Brian Boyd were in attendance.

49.    On information and belief, Mr. Butler created this presentation under false pretenses in order to embarrass Ms. Farrar-Clary and/or erode Boyd employees' respect for Ms. Farrar-Clary while preserving his own reputation and/or indisputably failed to advise the owners in a timely manner of the date and time of the presentation.

50.    Mr. Butler also generally refused to keep Ms. Farrar-Clary apprised of meetings and other information necessary to effectively complete her job.

51. On or about May of 2017, Ms. Farrar-Clary met with Brian Boyd, the manager of Boyd's Henderson dealership. Ms. Farrar-Clary discussed Mr. Butler's refusal to keep Ms. Farrar-Clary "in the loop" about important matters affecting Boyd's marketing.

52. Mr. Boyd dismissed Ms. Farrar-Clary's concerns as Mr. Butler "just doing business." Mr. Boyd then revealed to Ms. Farrar-Clary that she had been receiving lower pay than she was entitled to receive, beginning on or about May of 2016.

53. In or about May of 2017, Mr. Butler hired Jason Pittman, and directed Ms. Farrar-Clary to train Mr. Pittman in Boyd's marketing strategy. On information and belief, Mr. Pittman was hired as Ms. Farrar-Clary's replacement.

54. On or about June 28, 2017, Brian Boyd met with Ms. Farrar-Clary to discuss her concerns about Mr. Butler.

55. Mr. Boyd validated Ms. Farrar-Clary's concerns that she was being "forced out" of Boyd by Mr. Butler.

56. Ms. Farrar-Clary then asked Mr. Boyd if she would have a job in Henderson if she was terminated from Boyd. Mr. Boyd suggested that Ms. Farrar-Clary work exclusively for the Henderson dealership, but take a significant salary decrease, which Ms. Farrar-Clary learned would lower her salary to $36,000 per year.

57. Ms. Farrar-Clary's continually decreasing pay structure, as well as Mr. Butler's pervasive sexual misconduct and the related hostile work environment, caused Ms. Farrar-Clary significant stress and anxiety.

58. On June 30, 2017, two days after Ms. Farrar-Clary met with Mr. Boyd to discuss her ongoing concerns regarding Mr. Butler, Ms. Farrar-Clary was unlawfully terminated from employment.

**Brian Boyd Retaliates Against Ms. Farrar-Clary**
**For Reporting Butler & For Filing a**
**Charge of Discrimination With the EEOC**

59.     On or about December 14, 2017, Ms. Farrar-Clary sent a formal proposal for

contract marketing services to Mr. Brian Boyd, which included a one-year commitment.

60.     Mr. Boyd responded that he was reconsidering hiring Ms. Farrar-Clary to

do marketing work for Boyd Chevy, due to "the pending situation," meaning Ms. Farrar-

Clary's pending Charge of Discrimination.

61.     Mr. Boyd went on to say that he lacked "personal trust" in Ms. Farrar-Clary,

due to her filing a Charge of Discrimination.

62.     On or about February of 2018, Mr. Boyd contacted Ms. Farrar-Clary to

inform her that he accepted her proposal to conduct marketing services, but only if she

agreed to a month-to-month term. Unfortunately, Ms. Farrar-Clary was provided very

little work and experienced exceedingly rare communication from Mr. Boyd, and others,

at Boyd Chevy.

63.     On or about April 27, 2018, Ms. Farrar-Clary discovered that she was unable

to access her Boyd-provided email or other software needed to perform her services. In

addition, Ms. Farrar-Clary's access to Boyd social media account, integral to her

marketing services, was terminated.

64.     Ms. Farrar-Clary contacted Business Development Manager Sam Hampton,

Boyd's IT official, stating, "I think my access to my email has been cut off." Mr. Hampton

attempted to restore Ms. Farrar-Clary's access to Boyd-provided technological services,

but only in a lackadaisical manner.

9

65.    Ms. Farrar-Clary continued to experience a lack of communication, lack of information about necessary meetings with Mr. Boyd and other senior dealership managers, and a lack of work.

66.    Unfortunately, on or about July 2, 2018, Ms. Farrar-Clary received an email from Boyd Controller Susanne Muessig, at Mr. Boyd's behest, terminating her contract to provide marketing services effective August 2, 2018.

67.    Ms. Farrar-Clary was terminated from employment, on two separate occasions, in violation of Virginia public policy, as defined in *Bowman v. State Bank of Keysville*, as she was wrongfully discharged and/or retaliated against for refusing to submit to Mr. Butler's inappropriate sexual advances and commit adultery with him, in violation of Virginia Code Section 18.2-365.

68.    Ms. Farrar-Clary was further terminated from employment, on two separate occasions, in violation of Title VII of the Civil Rights Act of 1964, after experiencing discrimination and a hostile work environment based on her gender, female, and retaliation for not accepting Mr. Butler's advances and filing a Charge of Discrimination with the EEOC.

### III. Claims

<u>COUNT I: DISCRIMINATION IN VIOLATION OF TITLE VII</u>

69.    Ms. Farrar-Clary incorporates by reference herein the preceding paragraphs of this Amended Complaint.

70.    Ms. Farrar-Clary identifies her gender as female.

71.    At all times relevant to the Amended Complaint, Ms. Farrar-Clary's work performance met or exceeded the legitimate expectations of Boyd.

72.    At all times relevant to the Amended Complaint, Ms. Farrar-Clary was married to a man other than Mr. Butler.

73.    Throughout Ms. Farrar-Clary's employment with Boyd, Mr. Butler, who was Ms. Farrar-Clary's supervisor, repeatedly sought to engage Ms. Farrar-Clary in a sexual relationship with him.

74.    Ms. Farrar-Clary refused Mr. Butler's inappropriate sexual advances.

75.    However, Mr. Butler engaged in a campaign of ever-increasing discrimination, harassment, and retaliation because Ms. Farrar- Clary was steadfast in her refusal to engage in his sexual advances or commit adultery with him.  Ms. Farrar-Clary's persistent refusal eventually led to her wrongful discharge from employment by Boyd.

76.    Ms. Farrar-Clary complained of Mr. Butler's behavior to Brandon Boyd and Brian Boyd, who are officers and shareholders of Boyd.

77.    Neither Brandon nor Brian Boyd took any corrective action against Mr. Butler.

78.    The actions of Mr. Butler, Brandon Boyd, and Brian Boyd were conducted within the scope of their employment.  Thus, liability is imputed on Boyd through the doctrine of *respondeat superior*.

79.    The acts and omissions of Boyd in discharging Ms. Farrar-Clary because she refused to engage in Mr. Butler's sexual advances or the crime of adultery with Mr. Butler constitutes wrongful discharge in violation of Title VII.

80.    As a direct and proximate cause of Boyd's actions, Ms. Farrar-Clary has suffered and will continue to suffer pecuniary loss, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary loss.

## COUNT II: RETALIATION IN VIOLATION OF TITLE VII

81.    Ms. Farrar-Clary incorporates by reference herein the preceding paragraphs of this Amended Complaint.

82.    Ms. Farrar-Clary incorporates by reference herein the preceding paragraphs of this Amended Complaint.

83.    Ms. Farrar-Clary identifies her gender as female.

84.    At all times relevant to the Amended Complaint, Ms. Farrar-Clary's work performance met or exceeded the legitimate expectations of Boyd.

85.    At all times relevant to the Amended Complaint, Ms. Farrar-Clary was married to a man other than Mr. Butler.

86.    Throughout Ms. Farrar-Clary's employment with Boyd, Mr. Butler, who was Ms. Farrar-Clary's supervisor, repeatedly sought to engage Ms. Farrar-Clary in a sexual relationship with him.

87.    Ms. Farrar-Clary refused Mr. Butler's inappropriate sexual advances.

88.    However, Mr. Butler engaged in a campaign of ever-increasing discrimination, harassment, and retaliation because Ms. Farrar- Clary was steadfast in her refusal to engage in his sexual advances or commit adultery with him.  Ms. Farrar-Clary's persistent refusal eventually led to her wrongful discharge from employment by Boyd.

89.    Ms. Farrar-Clary complained of Mr. Butler's behavior to Brandon Boyd and Brian Boyd, who are officers and shareholders of Boyd.

90.    Shortly after Ms. Farrar-Clary complained of Mr. Butler's discriminatory and hostile behavior towards her, Ms. Farrar-Clary was terminated from Boyd.

91.    Further, Ms. Farrar-Clary sought to work for Boyd after her termination.

92.   Brian Boyd was hesitant to engage Ms. Farrar-Clary due to her filing of a Charge of Discrimination.

93.   Ms. Farrar-Clary was ultimately engaged by Brian Boyd. However, Mr. Boyd restricted Ms. Farrar-Clary's ability to engage in meetings or utilize Boyd's social media accounts.

94.   Ultimately, Mr. Boyd, through Boyd Controller Susanne Muessig, terminated Ms. Farrar-Clary's contract, due to her previous filing of a Charge of Discrimination against Boyd.

95.   The actions of Mr. Butler, Brandon Boyd, and Brian Boyd were conducted within the scope of their employment.  Thus, liability is imputed on Boyd through the doctrine of *respondeat superior*.

96.   As a direct and proximate cause of Boyd's actions, Ms. Farrar-Clary has suffered and will continue to suffer pecuniary loss, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary loss.

<u>COUNT III: HOSTILE WORK ENVIRONMENT<br>IN VIOLATION OF TITLE VII</u>

97.   Ms. Farrar-Clary incorporates by reference herein the preceding paragraphs of this Amended Complaint.

98.   Ms. Farrar-Clary identifies her gender as female.

99.   At all times relevant to the Amended Complaint, Ms. Farrar-Clary's work performance met or exceeded the legitimate expectations of Boyd.

100.  At all times relevant to the Amended Complaint, Ms. Farrar-Clary was married to a man other than Mr. Butler.

101.   Throughout Ms. Farrar-Clary's employment with Boyd, Mr. Butler, who was Ms. Farrar-Clary's supervisor, repeatedly sought to engage Ms. Farrar-Clary in a sexual relationship with him.

102.   Ms. Farrar-Clary refused Mr. Butler's inappropriate sexual advances.

103.   However, Mr. Butler engaged in a campaign of ever-increasing hostile work environment, discrimination, harassment, and retaliation because Ms. Farrar- Clary was steadfast in her refusal to engage in his sexual advances or commit adultery with him. Ms. Farrar-Clary's persistent refusal eventually led to her wrongful discharge from employment by Boyd.

104.   Ms. Farrar-Clary complained of Mr. Butler's behavior to Brandon Boyd and Brian Boyd, who are officers and shareholders of Boyd.

105.   Neither Brandon nor Brian Boyd took any corrective action against Mr. Butler.

106.   The actions of Mr. Butler, Brandon Boyd, and Brian Boyd were conducted within the scope of their employment.  Thus, liability is imputed on Boyd through the doctrine of *respondeat superior*.

107.   The acts and omissions of Boyd in discharging Ms. Farrar-Clary because she refused to engage in Mr. Butler's sexual advances or the crime of adultery with Mr. Butler constitutes wrongful discharge and hostile work environment in violation of Title VII.

108.   As a direct and proximate cause of Boyd's actions, Ms. Farrar-Clary has suffered and will continue to suffer pecuniary loss, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary loss.

<u>COUNT IV: WRONGFUL TERMINATION IN VIOLATION OF</u>
<u>VIRGINIA PUBLIC POLICY</u>

109.    Ms. Farrar-Clary incorporates by reference herein the preceding paragraphs of this Amended Complaint.

110.    At all times relevant to the Amended Complaint, Ms. Farrar-Clary was married to a man other than Mr. Butler.

111.    Throughout Ms. Farrar-Clary's employment with Boyd, Mr. Butler, who was Ms. Farrar-Clary's supervisor, repeatedly sought to engage Ms. Farrar-Clary in a sexual relationship with him.

112.    Ms. Farrar-Clary refused Mr. Butler's inappropriate sexual advances.

113.    The Supreme Court of Virginia has recognized a cause of action for wrongful discharge where the discharge was based on an employer's violation of a public policy, which is expressly stated in a statute, and the employee is clearly a member of the class entitled to the protection of that policy. The Courts have recognized that allowing the employment at-will doctrine to serve as a shield for employers who seek to force their employees, under threat of discharge, to engage in criminal conduct is a violation of Virginia public policy. *See Mitchem v. Counts*, 259 Va. 179, 18,3 523 S.E.2d 246, 248 (2000); *Bowman*, 229 Va. at 534, 331 S.E.2d at 797.

114.    The Commonwealth of Virginia's public policy is violated when a female employee, married or unmarried, must consent to the commission of a crime against her person and/or to engage in a conspiracy to commit a crime, to maintain her employment. *Mitchem*, 259 Va. at 183, 523 S.E.2d at 248. This public policy is embodied in Virginia Code Section 18.2-365, which prohibits adultery ("Any person, being married, who

voluntarily shall have sexual intercourse with any person not his or her spouse shall be guilty of adultery, punishable as a Class 4 misdemeanor.").

115.    Furthermore, this criminal statute was enacted to protect the "personal freedoms, health, safety, [and] welfare of the general public," and Ms. Farrar-Clary is a member of the class of persons these statutes were designed to protect. *See Mitchem*, 259 Va. at 189, 523 S.E.2d at 251.

116.    By demanding that Ms. Farrar-Clary, who is married to another man, engage in a sexual relationship with him to maintain her employment, as evinced by his treatment of other female employees and his increasingly retaliatory treatment of her, Mr. Butler was demanding that Ms. Farrar-Clary commit, or conspire to commit, the crime of adultery, or both.

117.    As a member of the general public, Ms. Farrar-Clary was directly entitled to her personal freedom, health, safety, and welfare.

118.    However, Mr. Butler engaged in a campaign of ever-increasing harassment and retaliation because Ms. Farrar- Clary was steadfast in her refusal to commit adultery with him.  Ms. Farrar-Clary's persistent refusal eventually led to her wrongful discharge from employment by Boyd.

119.    Because she was discharged for not committing criminal acts at the request of Mr. Butler, her supervisor, and because she was a member of the general public whom the Commonwealth's criminal statutes were designed to protect, Ms. Farrar-Clary's termination violates Virginia public policy.

120.    The actions of Mr. Butler, Brandon Boyd, and Brian Boyd were conducted within the scope of their employment.  Thus, liability is imputed on Boyd through the doctrine of *respondeat superior*.

16

121.     The acts and omissions of Boyd in discharging Ms. Farrar-Clary because she refused to engage in the crime of adultery with Mr. Butler constitutes wrongful discharge in violation of Virginia public policy.

122.     As a direct and proximate cause of Boyd's actions, Ms. Farrar-Clary has suffered and will continue to suffer pecuniary loss, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary loss.

WHEREFORE, Plaintiff Helen Elizabeth Farrar-Clary prays for judgment against Defendant The Boyd Corporation, South Hill, Virginia, and requests that the Court award her damages in the amount of Five Hundred Thousand Dollars ($500,000.00) in addition to equitable relief, compensatory, liquidated and/or punitive damages together with pre-judgment interest from the date of wrongful termination, as well as incidental and consequential costs associated herewith, including attorney's fees and other such relief as would be fair and equitable.

RESPECTFULLY SUBMITTED,

**HELEN ELIZABETH FARRAR-CLARY**

Thomas E. Strelka, Esq. (VSB# 75488)
L. Leigh R. Strelka, Esq. (VSB # 73355)
N. Winston West, IV, Esq. (VSB # 92598)
STRELKA LAW OFFICE, PC
Warehouse Row
119 Norfolk Avenue, S.W., Suite 330
Roanoke, VA 24011
Tel:  540-283-0802
thomas@strelkalaw.com
leigh@strelkalaw.com
winston@strelkalaw.com

*Counsel for Plaintiff*

17

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 11th day of March, 2019, the foregoing was sent to the following attorneys for the Defendant via United States Mail.

J. Clay Rollins, Esq.
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
Riverfront Plaza - West Tower
901 East Byrd Street, Suite 1300
Richmond, VA 23219
Telephone: 804-663-2332
Fax: 804-225-8641
clay.rollins@ogletree.com

Brodie D. Erwin, Esq.
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
4208 Six Forks Road, Suite 1100
Raleigh, NC 27609
Telephone: 919-789-3176
Fax: 919-783-9412
brodie.erwin@ogletree.com

*Counsel for Defendant*

Thomas E. Strelka, Esq. (VSB # 75488)
L. Leigh R. Strelka, Esq. (VSB # 73355)
N. Winston West, IV, Esq. (VSB # 92598)
STRELKA LAW OFFICE, PC
Warehouse Row
119 Norfolk Avenue, S.W., Suite 330
Roanoke, VA 24011
(540) 283-0802
thomas@strelkalaw.com
leigh@strelkalaw.com
winston@strelkalaw.com

*Counsel for Plaintiff*

18

# EXHIBIT A

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| To: | Helen E. Farrar-Clary | From: | Norfolk Local Office<br>200 Granby Street<br>Suite 739<br>Norfolk, VA 23510 |
|---|---|---|---|

[ ]  On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 438-2018-00061 | Janina Zequeira-Perez,<br>Investigator | (757) 441-3241 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ]  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]  Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ]  The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ]  Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X]  The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ]  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ]  Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):**  EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

Norberto Rosa-Ramos,
Local Office Director

2/20/19
*(Date Mailed)*

Enclosures(s)

cc:
| Brandon Boyd<br>Owner Operator<br>THE BOYD CORPORATION<br>1121 E. Atlantic Street<br>South Hill, VA 23970 | Thomas E. Strelka<br>STELKA LAW OFFICE, PC<br>Warehouse Row<br>119 Norfolk Avenue, S.W., Suite 330<br>Roanoke, VA 24011 |
|---|---|

EXHIBIT A

# EXHIBIT B

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

To: Helen Farrar Clary

From:  Norfolk Local Office
200 Granby Street
Suite 739
Norfolk, VA 23510

[ ]  *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 437-2018-01632 | Janina Zequeira-Perez, Investigator | (757) 441-3241 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ]  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]  Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ]  The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ]  Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[ ]  The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ]  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[X]  Other *(briefly state)*    **CP was a contractor.**

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

On behalf of the Commission

**Norberto Rosa-Ramos,**
**Local Office Director**

2/20/19
*(Date Mailed)*

Enclosures(s)

cc:
**Brandon Boyd**
**Owner Operator**
**THE BOYD CORPORATION**
**1121 E. Atlantic Street**
**South Hill, VA 23970**

**Thomas E. Strelka**
**STRELKA LAW OFFICE, PC**
**119 Norfolk Avenue S.W.**
**Suite 330**
**Roanoke, VA 24011**

# EXHIBIT B

VIRGINIA:

## IN THE CIRCUIT COURT FOR THE CITY OF ROANOKE

HELEN ELIZABETH FARRAR-CLARY,　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　　Plaintiff　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　v.　　　　　　　　　　　　　)　　　　CL18000447-00
　　　　　　　　　　　　　　　　　　)
THE BOYD CORPORATION,　　　　　　 )
SOUTH HILL, VIRGINIA,　　　　　　 )
　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　　Defendant.　　　　　)

## PROPOSED ORDER

　　　　UPON CONSIDERATION of Defendant's Motion for Extension of Response Deadline,

and for good cause shown, it is hereby **ORDERED** that Defendant's Motion be **GRANTED**.

　　　　Defendant The Boyd Corporation, South Hill, Virginia shall have up to and including April

17, 2019 to answer or otherwise respond to Plaintiff's Amended Complaint. *The Clerk shall send copies to counsel.*

　　　　　　　　　　　　　　Signed: *April 1, 2019*

　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　Judge, Circuit Court for the City of Roanoke

A COPY TESTE BRENDA S. HAMILTON, CLERK
By _____ Deputy Clerk